UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**WESBANCO BANK, INC.,**

       **Plaintiff,**

                         **Case No. 1:24-cv-601**

   **v.**

                              **JUDGE DOUGLAS R. COLE**

**FACILITY SOLUTIONS GROUP, INC.,**

       **Defendant.**

## OPINION AND ORDER

As the Bard once famously admonished, neither a borrower nor a lender be. William Shakespeare, *Hamlet*, Act 1, sc. 3. While one might question whether that is financially savvy advice in today's often highly leveraged business world, this case aptly illustrates some of the potential difficulties that can arise in connection with such undertakings. Plaintiff WesBanco Bank, Inc. (WesBanco), extended a loan to a business client, which put up its assets as collateral to secure the loan. When that client defaulted, WesBanco tried to recover against the collateral, only to discover that its client had transferred the assets to Defendant Facility Solutions Group, Inc. (FSG), without WesBanco's consent. So WesBanco sued FSG, stating four claims all premised on the idea that FSG is wrongfully possessing property that rightfully belongs to WesBanco. FSG now moves the Court to dismiss the claims against it or, in the alternative, to order WesBanco to supply a more definite statement of those claims. (Doc. 17). For the reasons explained below, the Court **DENIES** those requests.

## BACKGROUND[1]

The story is best told in three parts: (1) the loan itself; (2) the non-party debtor's default coupled with the plaintiff-creditor's (i.e., WesBanco's) quest to recover; and (3) the non-debtor defendant's (i.e., FSG's) alleged interference in that effort. Take each in turn.

In January 2024, WesBanco extended a five-million-dollar line of credit to Eco Engineering, Inc. (Eco[2]), which isn't a party to this case. (Am. Compl., Doc. 14, #123). Three interrelated documents structure that loan's terms: (1) a loan agreement; (2) a promissory note; and (3) a security agreement. (*Id.*). WesBanco attached copies of those three documents as exhibits to its Amended Complaint. (Doc. 14-1 (Ex. A); Doc. 14-2 (Ex. B); Doc. 14-3 (Ex. C)).

For present purposes, the loan documents' thrust is simple. They establish a revolving credit facility from which Eco could draw advances in amounts of its choosing, so long as the aggregate outstanding balance didn't exceed the Borrowing Base, defined as the "lesser of" either five million dollars or a specified formula (which is not relevant here). (Doc. 14-1, #139, 145).

---

[1] Because this matter comes before the Court on FSG's motion to dismiss, the Court must accept the well-pleaded allegations in the Amended Complaint, attached exhibits, and relevant matters of public record as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But the Court reminds the reader that they are just that—allegations.

[2] The parties refer to Eco as "ECO" in their filings. But because that company's name isn't an acronym, the Court will capitalize only its first letter, even when quoting directly from the parties' filings.

Eco agreed to make monthly payments on its advances, with some pretty serious consequences for failing to do so. (Doc. 14-2, #148). Specifically, missing even one monthly payment gave WesBanco the right to accelerate Eco's obligation to pay back the entire outstanding balance and interest. (Doc. 14-1, #143). And if Eco then failed to fulfill that accelerated demand, it would be in default under the terms of the loan agreement. (*Id.*). Defaulting, in turn, would vest WesBanco with "all the rights of a secured party," including rights of possession and of sale, over the assets that Eco had pledged in advance of the default as collateral to secure the loan. (Doc. 14-3, #154). Among many other asset classes, that pledge included Eco's inventory, equipment, and accounts receivable. (*Id.* at #152). Importantly, the loan documents prohibited Eco from transferring or disposing of the collateral without WesBanco's consent, excepting transactions carried out in the ordinary course of business. (Doc. 14-3, #153). And WesBanco duly filed a financing statement with the Ohio Secretary of State, which perfected its security interest in the collateral assets. (Doc. 14-4).

Eco defaulted almost immediately. So, just five months after the parties executed the loan documents, WesBanco accelerated Eco's repayment obligation under the note, as Eco had "failed to fulfill its obligations under the [l]oan [d]ocuments." (Doc. 14, #124). Eco then failed to pay the amount due and owing in response to WesBanco's demand, putting Eco in default. (*Id.*).

Once Eco defaulted, WesBanco sued it and its guarantor[3] in the Hamilton County Court of Common Pleas, obtaining a judgment for just over three million

---

[3] As WesBanco explained in its state-court Complaint, an individual named Thomas La Pour Kirkpatrick personally guaranteed Eco's loan. (Compl., *WesBanco Bank, Inc. v. Eco Eng'g,*

dollars. (*Id.*; *see also* Judgment Entry, *WesBanco Bank, Inc. v. Eco Eng'g, Inc.*, No. A2403638 (Hamilton Cnty. Ct. Com. Pl. Aug. 14, 2024)). On top of the monetary judgment, the state court "granted [WesBanco] immediate possession of all property, goods, and chattels described in the [s]ecurity [a]greement." (Agreed Judgment Entry, *WesBanco Bank, Inc. v. Eco Eng'g, Inc.*, No. A2403638 (Hamilton Cnty. Ct. Com. Pl. Dec. 17, 2024)).[4]

Unfortunately for WesBanco, its state-court victory turned out to be the key to an empty chest. Even with the judgments in hand, it couldn't get ahold of the collateral to make itself whole, for the simple reason that Eco no longer possessed the collateral. (*See* Doc. 14, #125). Enter the defendant in this case—Facility Solutions Group, Inc. (FSG). According to WesBanco, Eco emptied its coffers just before it defaulted by transferring "substantially all of [the] assets … which form the [c]ollateral" to FSG. (*Id.* at #125, 128; *see also* Doc. 14-5, #163 (asset purchase agreement between Eco and FSG dated May 9, 2024)). After taking Eco's assets, FSG "began operating out of Eco's principal place of business," taking over Eco's operations and "us[ing], deplet[ing], and withhold[ing] the [c]ollateral in violation of WesBanco's perfected security interest." (Doc. 14, #125). To make matters worse, the asset purchase agreement (APA) by which FSG acquired Eco's assets—which WesBanco

---

*Inc.*, No. A2403638 (Hamilton Cnty. Ct. C.P. Aug. 14, 2024)). Kirkpatrick isn't a party to this case, and the terms of the guaranty he executed aren't at issue here.

[4] The non-monetary judgment declaring WesBanco's rights in the collateral isn't specifically mentioned in the Amended Complaint. But because it is a matter of public record, the Court may consider it at the motion-to-dismiss stage. *See Jones v. City of Cincinnati*, No. 1:22-cv-530, 2024 WL 707288, at *5 (S.D. Ohio Feb. 21, 2024) (quoting *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023)).

also attached as an exhibit to its Complaint, (Doc. 14-5)—shows that "FSG was fully aware of WesBanco's interest in the [c]ollateral." (Doc. 14, #126–27 (citing Doc. 14-5)). Indeed, one of the APA's terms—mirroring the loan documents' transfer prohibition—provided that "the [APA] shall be null and void" absent WesBanco's consent to the transfer. (*Id.* at #127).

Since it first found FSG in possession of the collateral, WesBanco "has made repeated demands" for its return. (*Id.*). But FSG continues to "impermissibly hold those [assets]," even though it has "acknowledged that the APA is not in effect" absent WesBanco's consent. (*Id.*; *see also* Doc. 17, #195 (agreeing that the APA is void)). Moreover, beyond declining to return the collateral, FSG allegedly took affirmative steps to benefit from it. For example, "at least one Eco customer" has notified WesBanco that the customer is prepared to pay more than one million dollars of invoices that it owes to Eco—in other words, satisfy an account receivable constituting part of Eco's collateral—directly to WesBanco. (*See* Doc. 14, #128). But FSG "directed [that customer] to not submit the payment," instead "falsely stat[ing] to Eco customers that FSG has taken over Eco's business," a statement it made as part of an effort "to convert funds [constituting accounts receivable] belonging to WesBanco." (*Id.*).

None too happy with FSG's conduct, WesBanco sued. (Compl., Doc. 1). Its Amended Complaint, (Doc. 14), states six claims, all revolving around FSG's acquisition of, and refusal to return, the loan collateral. Four of those claims are substantive: (1) enforcement of Article 9 of the Uniform Commercial Code (Count

5

One); (2) common-law conversion and civil damages for criminal theft under Ohio Revised Code § 2307.60 (Count Two); (3) tortious interference with Eco's performance of the security agreement (Count Three); and (4) impairment of collateral (Count Four). (*Id.* at #129–33). And the remaining two "claims" are really requests for specific kinds of relief: a request for the imposition of a constructive trust (Count Five) and for an injunction prohibiting FSG from continuing to wrongfully possess and use the collateral (Count Six). (*Id.* at #133–36).

FSG moved to dismiss all the claims against it or, in the alternative for a more definite statement. (Doc. 17). In support of the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it argues that WesBanco failed to plausibly allege various elements required to sustain each of its substantive claims. (*See id.* at #187–204). And to support its alternate request for a more definite statement under Federal Rule of Civil Procedure 12(e), FSG argues that the Court should order WesBanco to supplement its allegations to cure "certain deficiencies" that make it impossible to "plausibly infer that FSG is potentially liable to WesBanco." (*Id.* at #204–05). WesBanco responded, (Doc. 19), and FSG replied, (Doc. 21), so the matter is ripe for the Court's review.

## LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter ... to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for

6

relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts for the Court "to draw the reasonable inference that the defendant is liable." *Id.* In determining whether the allegations meet that standard, the Court "construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take the allegations as gospel, no matter how unsupported they are. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). Finally, the Court may also consider information from certain sources outside the pleadings, such as "public record[s], orders, items appearing in the record of the case, and exhibits attached to the complaint." *Jones v. City of Cincinnati*, No. 1:22-cv-530, 2024 WL 707288, at *5 (S.D. Ohio Feb. 21, 2024) (quoting *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023)).

In other words, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (quotation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will

not suffice." *Id.* at 276 (quotation omitted). In short, a court will dismiss an action when "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

## B.    Motion for a More Definite Statement Under Rule 12(e).

Motions for a more definite statement under Federal Rule of Civil Procedure 12(e) allow a party to seek clarification of a "pleading … which is so vague or ambiguous that the party cannot reasonably prepare a response." That rule is "designed to strike at unintelligibility rather than simple want of detail. It must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007) (cleaned up).

## LAW AND ANALYSIS

FSG takes aim at every Count of WesBanco's Amended Complaint, arguing that each one is subject to dismissal for a variety of reasons. (*See generally* Doc. 17). WesBanco, for its part, voluntarily dismissed Count One in its Response. (Doc. 19, #229 n.1). So the Court only addresses FSG's arguments as to the remaining counts, followed by a brief aside on FSG's alternative motion for a more definite statement. On the former, the Court finds that each remaining claim survives FSG's motion. And on the latter, the Court finds that the alternative motion for a more definite statement is really just a restatement of the motion to dismiss and therefore fails for the same reasons. Consider each in turn.

8

### A.    WesBanco Adequately Pleaded Its Conversion Claim.

Start with FSG's arguments to dismiss the first half of Count Two—the civil conversion claim. In broad strokes, FSG argues that the claim "is based on conclusory assertions and … should be dismissed." (Doc. 17, #192). The Court disagrees since, as described below, WesBanco's allegations—which the Court must accept as true at this stage—easily fulfill the claim's three elements.

To ultimately prevail on a conversion claim under Ohio law, a plaintiff must show (1) its "ownership or right to possession of the property at the time of the conversion;" (2) the defendant's "conversion by a wrongful act or disposition of plaintiff's property rights;" and (3) damages. *First Fin. Bank v. Fox Cap. Grp., Inc.*, 692 F. Supp. 3d 762, 768 (S.D. Ohio 2023). So at the pleading stage, the plaintiff must provide factual allegations creating a reasonable inference that it will be able to show each of these three elements. Take each one in turn.

First, on the ownership element, WesBanco adequately pleaded two interrelated sources of its rights over the allegedly converted collateral. Source number one: the three loan documents (which created WesBanco's security interest) and the financing statement (which perfected that interest). (*See* Doc. 19, #231). Each of the three loan documents WesBanco and Eco executed to create the underlying loan spell out WesBanco's security interest in the loan collateral. (Doc. 14-1, #139–40; Doc. 14-2, #149; Doc. 14-3, #152). And the financing statement, duly filed with the Ohio Secretary of State, perfected that security interest—or, in other words, made WesBanco's security interest applicable against non-parties to the loan documents, like FSG (potentially subject to limitations not relevant here). (Doc. 14-4); *see also*

*Arace v. Metro. Cablevision*, No. 65452, 1994 WL 189161, at *2 (Ohio Ct. App. May 12, 1994) (explaining that "a security interest in accounts receivable shall be perfected only by filing appropriate financing statements"); Ohio Rev. Code § 1309.310. Source number two (really, a state court's affirmance of source number one): the judgments WesBanco won in state court, which "granted [WesBanco] immediate possession of all property, goods, and chattels described in the [s]ecurity [a]greement." (Agreed Judgment Entry, *WesBanco Bank, Inc. v. Eco Eng'g, Inc.*, No. A2403638 (Hamilton Cnty. Ct. Com. Pl. Aug. 14, 2024)). At bottom, WesBanco amply pleaded its right to possess and control the collateral, so the Court finds it difficult to credit FSG's assertion that the Amended Complaint "lacks specific allegations detailing … that WesBanco indeed had an immediate right to possess" the collateral. (Doc. 17, #192).

Turning to the second element, WesBanco adequately pleaded FSG's wrongful disposition of the collateral, which is a reasonable inference arising from WesBanco's description of how FSG came to possess the collateral. Indeed, WesBanco went a step further than merely *describing* FSG's transaction with Eco—WesBanco attached to its pleadings the APA that *effected* that transaction, (Doc. 14-5), the veracity of which FSG accepts, (*see* Doc. 17, #196 (discussing the APA's terms and effect)). Remarkably, FSG also accepts that its acquisition of the assets was wrongful under the APA by its own terms. Recall that one of the APA's provisions required WesBanco to assent to the transfer from Eco to FSG, lest the transfer be void. (Doc. 17, #195). Given that provision, "FSG agrees" with WesBanco's allegation that "because [WesBanco] did

10

not consent to the APA, any attendant [t]ransfer is null and void." (*Id.* (quotation omitted)). So the Court struggles to understand how FSG can argue that WesBanco has failed to provide "specific allegations detailing … how FSG exercised wrongful dominion" over the collateral, especially in light of FSG agreeing that the only justification (a shaky one, at that) that's been presented to the Court for FSG's possession of the collateral (i.e., the APA) is null and void. (Doc. 17, #192).

Finally, WesBanco's description of its damages—including the example it furnished of FSG's diversion of a specific account receivable worth "over $1,000,000"—satisfies the conversion claim's damages element. (Doc. 14, #128); *cf. DLK Co. of Ohio v. Meece*, 2013-Ohio-860, ¶ 35 (12th Dist.) (affirming summary judgment in creditor's favor where it had presented evidence supporting "the amount of the [conversion]").

FSG's remaining two counterarguments are unpersuasive. First, FSG argues that WesBanco failed to adequately identify the specific money to which it lays claim. (Doc. 17, #189–90.) But the standard to which FSG points—requiring plaintiffs to plead facts showing that the allegedly converted monies "were earmarked, segregated, or otherwise sequestered" from other cash—applies to claims alleging conversion of one specific asset class: money. (Doc. 17, #190 (citing *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 768–69 (N.D. Ohio 2013))). To that extent, the Court agrees the Amended Complaint falls short of alleging that FSG converted any funds akin to "money in a bag" subject to an obligation to deliver that specific bag rather than an equivalent sum. *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp.

2d 677, 700 (S.D. Ohio 2012). But the Amended Complaint alleges a lot more than that. Indeed, the bulk of the allegations center on allegedly converted accounts receivable, equipment, and inventory. (*See* Doc. 14, #125 (specifying value of allegedly converted equipment, inventory, and accounts receivable)). And the Court cannot find, nor has FSG identified, any authority applying the "money in a bag" standard to those distinct asset classes. Second, FSG argues more generally that WesBanco failed to sufficiently identify the allegedly converted property *at all*. That's a tough argument to track, since the APA attached to the Amended Complaint spells out, line by line, the exact assets Eco transferred to FSG. (Doc. 14-5, #165–70).

At bottom, WesBanco's allegations more than suffice to carry its claim for conversion past the motion-to-dismiss stage. And FSG's arguments to the contrary are replete with assertions that simply do not correspond to the information WesBanco presented in its Amended Complaint and attached exhibits. For those reasons, the Court declines to dismiss WesBanco's conversion claim.

**B.  WesBanco Adequately Pleaded its Claim for Civil Damages for a Criminal Act.**

Next, FSG takes aim at the second half of Count Two: WesBanco's claim to civil recovery for theft under Ohio Revised Code §§ 2307.60, .61. FSG argues that WesBanco failed to plausibly allege that FSG committed a "theft offense" as defined by Ohio law—a threshold requirement to civil recovery under § 2307.61. (Doc. 17, #192–94). The Court disagrees, since the same allegations that support WesBanco's claim for civil conversion also support its claim that FSG committed a theft offense.

Ohio law vests persons injured by a "theft offense," as defined by Ohio Revised Code § 2913.01(K), with a civil cause of action. Ohio Rev. Code §§ 2307.60, .61. Unsurprisingly, the category of theft offenses includes theft itself. *Id.* § 2913.01(K)(1) (including "theft" as defined by Ohio Rev. Code § 2913.02). Under the theft statute, a person is guilty when, "with purpose to deprive the owner of property or services, [they] knowingly obtain or exert control over either the property or services … [w]ithout the consent of the owner or person authorized to give consent." *Id.* § 2913.02(A)(1).

The same allegations that support WesBanco's conversion claim also support its claim that FSG committed theft, plausibly establishing that WesBanco is entitled to civil recovery for a criminal act. *Cf. Best Motors L.L.C. v. Kaba*, 2025-Ohio-640, ¶ 42 (8th Dist.) (describing the elements of criminal theft and civil conversion as "similar[]" and analyzing them in parallel). To briefly restate those allegations: FSG took possession of Eco's assets knowing that they constituted collateral to which WesBanco had a superior claim, as evidenced by the APA's terms, and refused to return those assets upon demand. (Doc. 14, #126–27). At this early stage, and without more developed argument to the contrary, the Court finds those allegations adequately spell out the elements of theft under Ohio law. For that reason, the Court declines to dismiss WesBanco's claim to civil recovery for theft under Ohio Revised Code §§ 2307.60, .61.

C.     **WesBanco Adequately Pleaded Its Claim for Tortious Interference.**

Turn now to Count Three, WesBanco's claim for tortious interference with a contract—specifically, that FSG tortiously interfered with the security agreement between WesBanco and Eco. (Doc. 14, #132). FSG argues that the Court should dismiss that claim because, in its view, WesBanco failed to plausibly allege its elements. (Doc. 17, #194–98). Once again, the Court disagrees.

To state a claim for tortious interference with a contract, a plaintiff must plausibly allege "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). FSG doesn't contest the existence of the underlying contract: the security agreement between WesBanco and Eco. (Doc. 17, #194). But it argues that WesBanco failed to plead adequate facts to support the remaining four elements of tortious interference. To show why that's not the case, the Court addresses each in turn.

Start with the wrongdoer's knowledge of the contract. "The knowledge required is actual knowledge; constructive knowledge is not sufficient to sustain a cause of action for tortious interference with contract." *Becker v. Cardinal Health, Inc.*, 179 N.E.3d 769, 779 (Ohio Ct. App. 2021) (citing *Gentile v. Turkoly*, 2017-Ohio-1018, ¶ 29 (7th Dist.)). More specifically, the defendant must have actual knowledge "of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract." *Crown Equip. Corp. v. Toyota Material Handling, U.S.A., Inc.*, 202 F. App'x 108, 111 (6th Cir. 2006). WesBanco has plausibly alleged

14

such knowledge here. Indeed, as described above, the APA that FSG executed with Eco explicitly recognized that Eco's assets were "subject to the liens" described in the security agreement. (Doc. 14, #126). On top of that, FSG explicitly committed to "make direct payments to the lenders for the [WesBanco line of credit] and provide Eco with proof of those payments," (*id.*), a commitment from which the Court can reasonably infer that FSG had actual knowledge of Eco's obligation under the security agreement to satisfy WesBanco's lien on its accounts receivable.

FSG doesn't meaningfully contest those points, opting instead to attempt to heighten the "actual knowledge of the contract" requirement to an "actual knowledge of the *specific terms* of the contract" standard. (*See* Doc. 17, #195–96). But it doesn't cite a single case to that effect. And the one case it did cite in its discussion of tortious interference's knowledge element recognized that "alleg[ations] that [the defendant] had *any* knowledge of the specific contracts," not necessarily the specific *terms* of the contracts, suffice to state a claim. *Becker*, 179 N.E.3d at 779 (emphasis added). Stated differently, the Court understands the actual-knowledge standard "requires only knowledge of the contractual relationship sufficient to put the defendant on notice that its actions could interfere with an existing contract," not the existing contract's specific terms. *Crown Equip. Corp.*, 202 F. App'x at 111. WesBanco adequately pleaded the former, and FSG hasn't presented any authority requiring it to present facts supporting the latter.

Move to the intent element. A plaintiff can show intent in one of two ways: (1) "by proving that the defendant acted with the purpose or desire to interfere with

the performance of the contract;" or (2) "by proving that the defendant knew that interference was certain or substantially certain to occur as a result of its actions." *RFC Cap. Corp. v. EarthLink, Inc.*, 2004-Ohio-7046, ¶ 68 (10th Dist.). WesBanco's allegations plausibly support the latter theory. Again, the APA's terms show that FSG knew that Eco had an obligation to repay WesBanco, (Doc. 14, #126), so it's reasonable to infer that FSG also knew that preventing that repayment from occurring would interfere with Eco's performance of its contract with WesBanco. Once again, though, FSG argues that it can only have had the requisite intent if it knew the specific terms of the security agreement. (Doc. 17, #196). And again, the case it cites to support that contention—*RFC Capital*—says no such thing. Instead, *RFC Capital* held that the evidence presented at trial disproved intent because the defendant there was duped into the transaction by the debtor, who had promised the defendant that the security interest in the collateral at issue had been extinguished. *RFC Cap. Corp.*, 2004-Ohio-7046 at ¶ 68. Here, WesBanco alleged the opposite: that the APA *explicitly informed* FSG of WesBanco's current security interest in Eco's assets. (Doc. 14, #126). That allegation suffices to show, at the motion-to-dismiss stage, that FSG "knew that interference was certain or substantially certain to occur as a result of its actions." *RFC Cap. Corp.*, 2004-Ohio-7046 at ¶ 68.

Next up is the element requiring WesBanco to show that FSG lacked justification for its conduct. In determining whether a defendant's alleged interference is justified, Ohio courts consider a number of factors from the Restatement (Second) of Torts: (1) the nature of the actor's conduct; (2) the actor's

motive; (3) the interests of the other with which the actor's conduct interfered, (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of the actor and the contractual interests of the other; (6) the proximity of the actor's conduct to the interference, and (7) the relations between the parties. *Fred Siegel Co., L.P.A.*, 707 N.E.2d at 860. "The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability." *Id.* at 858. These factors are fact-intensive, and their resolution is best left to a stage of litigation where the Court (or a jury) has a fuller view of the facts. *Cf. Prime Contracting, Inc. v. Wal-Mart Stores, Inc.*, No. 06-383, 2008 WL 2859014, at *5 (E.D. Ky. July 22, 2008) (discussing Kentucky's law on the justification element of tortious interference, which, like Ohio's, follows the Restatement).

At this very early stage, the only question is whether WesBanco's allegations make a plausible case that FSG's interference wasn't justified. They do. Three facts stand out. First, FSG knew the risks of acquiring Eco's assets, as shown by the APA's terms. (Doc. 14, #126). Despite that, FSG chose to go ahead with the transfer. Second, when WesBanco reached out to let FSG know that Eco had defaulted (entitling WesBanco to the collateral), FSG refused to return the assets, and allegedly also took affirmative steps to divert future customer payments to its own accounts. (*Id.* at #128). And third, FSG *itself* argues that the APA was void in the first place because WesBanco never consented to it. (Doc. 17, #195). So it admits that it had no "legally

17

protected interest of [its] own" that would justify its actions—after all, without the APA, the Court struggles to see *any* justification FSG has for holding Eco's assets. (*Id.* at #197 (quoting *Columbia Dev. Corp. v. Krohn*, 2014-Ohio-5607, ¶ 26 (1st Dist.))).

Finally, damages. As discussed earlier, *see supra* Part A, WesBanco's Amended Complaint spells out the damages that allegedly flowed from FSG's actions.

In sum, WesBanco's allegations plausibly support each element of its claim for tortious interference with contract, and FSG's counterarguments fail to account for the Amended Complaint's allegations, misconstrue relevant caselaw, or both. So the Court declines to dismiss the tortious interference claim.

**D.    WesBanco Adequately Pleaded its Claim for Impairment of Collateral.**

WesBanco's final substantive claim against FSG is for impairment of collateral. Again, FSG's arguments for dismissal fail.

A claim for impairment of collateral under Ohio law has two elements. First, the plaintiff must show that "the defendant's actions lessened the value of [its] security interest." *RFC Cap. Corp.*, 2004-Ohio-7046 at ¶ 72. And second, it must show that that diminution of value caused it damage. *Id.* WesBanco has done both. It alleged numerous facts showing that FSG's possession of Eco's collateral—both accounts receivable and otherwise—has reduced its value. (Doc. 14, #125–28). And WesBanco alleged actual damages by pointing to at least one instance in which it couldn't recover a specific account receivable even though the account debtor

18

expressed its willingness to pay, owing to FSG's diversion of that payment. (*Id.* at #128).

FSG's counterarguments, like its assertions in response to other of WesBanco's claims discussed above, manufacture requirements that don't exist in the law. First, it argues that the impairment claim fails because WesBanco failed to "allege[] that it cannot collect the monies owed … through the other collateral." (Doc. 17, #200). But the single case it cites doesn't impose any such requirement on impairment claims. *See S&T Bank, Inc. v. Advance Merch. Servs., LLC*, 255 N.E.3d 164, 182 (Ohio Ct. App. 2024) (explaining that the plaintiff hadn't adequately shown damages for its *tortious interference* claim because it never alleged nonpayment). And even if that requirement existed, the entire thrust of WesBanco's Amended Complaint is that it *couldn't* recover through other collateral, because FSG has taken possession of "substantially all" of it. (Doc. 14, #125). Second, FSG argues that WesBanco's impairment claim fails because it "does not identify any wrongful act on FSG's part." (Doc. 17, #200). Again, wrongfulness isn't a requirement to state a claim for impairment of collateral. And this time, FSG didn't even *try* to cite a case saying so.

For those reasons, the Court declines to dismiss WesBanco's claim for impairment of collateral.

## E. WesBanco's "Claims" for a Constructive Trust and Injunctive Relief Are Properly Understood as Requests for Certain Remedies, and Therefore Not Subject to Dismissal.

Moving on from the four substantive claims, FSG also seeks dismissal of WesBanco's "claims" for specific remedies: a constructive trust and preliminary or

permanent injunctive relief. (Doc. 17, #201–04). Neither of those requests are properly understood as standalone claims. *See Figgie v. Figgie*, 2021-Ohio-1195, ¶¶ 42–52 (explaining that a constructive trust is a remedy available for certain types of claims, not a claim itself); *Cap. Equity Grp. v. Ripken Sports Inc.*, 744 F. App'x 260, 264–65 (6th Cir. 2018) (explaining that a "claim" for a preliminary injunction is not a standalone cause of action, "but merely [an] equitable remed[y]"). The Court finds it unnecessary to "dismiss" that which isn't a "claim" to start. *See* Fed. R. Civ. P. 12(b)(6) (allowing for dismissal for "failure to state a *claim* upon which relief can be granted" (emphasis added)). Instead, it suffices at this stage to note that the Amended Complaint's titling of Counts Five and Six as "claims" is a misnomer, and that the availability of specific remedies is a matter to be determined only if WesBanco succeeds on the merits of one or more of its underlying causes of action. *Cf. Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 809 n.1 (E.D. Mich. 2015) ("It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy." (quotation omitted)).

## F.   FSG's Request for a More Definite Statement Fails to Discuss the Relevant Standard.

Finally, FSG's alternative request for a more definite statement is nothing more than a restatement of its argument for dismissal. FSG argues that "certain deficiencies exist globally in Plaintiff's Amended Complaint and the claims made therein are supported by conclusory allegations that are devoid of any facts from which this Court could plausibly infer that FSG is potentially liable to WesBanco." (Doc. 17, #204–05). That argument doesn't even make a passing attempt at discussing

the relevant standard, which is whether the Amended Complaint's allegations are "so vague or ambiguous that the [defendant] cannot reasonably prepare a response." *Burgess v. Comm'r Soc. Sec.*, No. 1:24-cv-181, 2025 WL 1642691, at *2 (S.D. Ohio June 10, 2025). So the Court declines to order WesBanco to furnish a more definite statement.

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** FSG's Motion to Dismiss Plaintiff's Amended Complaint, or, in the Alternative, Motion for a More Definite Statement (Doc. 17).

      **SO ORDERED.**

August 19, 2025
**DATE**                                         **DOUGLAS R. COLE**
                                              **UNITED STATES DISTRICT JUDGE**