**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**WESBANCO BANK, INC.,**

**Plaintiff,**

**v.**

**FACILITY SOLUTIONS GROUP, INC.,**

**Defendant.**

**Case No. 1:24-cv-601**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

The Court earlier resolved a motion to dismiss in this case, concluding the case could move forward. (Doc. 22). Since then, Defendant Facility Solutions Group, Inc. (FSG), has answered and raised several counterclaims against Plaintiff WesBanco Bank, Inc. (Doc. 23). WesBanco now moves for judgment on the pleadings on those counterclaims. (Doc. 32). In addressing that motion, the Court notes at the outset that this case aptly illustrates the problems that can arise—both legal and practical—when engaging in commercial dealings with insolvent or nearly insolvent companies. WesBanco lent money to Counterclaim-Defendant Eco Engineering, Inc. But shortly thereafter, facing financial difficulties, Eco defaulted on that loan. FSG, a subcontractor to Eco on various ongoing projects, hopped into the fray. FSG kept working on the projects to allow Eco to generate new revenue from its customers based on project completion. FSG says it did so with the understanding that its efforts would be rewarded. But when the new funds arrived in Eco's accounts, WesBanco seized them relying on its security interest from the unpaid loan. That left FSG

holding the bag for the millions of dollars of additional work it supplied to Eco's (and indirectly WesBanco's) benefit. FSG now advances four separate legal and equitable theories claiming that WesBanco (in concert with Eco) wrongly deprived FSG of payment for the services it provided. WesBanco, by contrast, says that all of FSG's claims fail as a matter of law, as WesBanco was merely asserting its rights as a secured lender to the funds in Eco's account.

For the reasons explained below, the Court concludes that WesBanco has the better of the arguments. So the Court **GRANTS** WesBanco's motion for judgment on the pleadings (Doc. 32) and **DISMISSES** counterclaim counts seven, eight, nine, and ten, but **WITHOUT PREJUDICE**. Because the dismissal is without prejudice, FSG is free to move for leave to amend its counterclaims, if it can address the shortcomings the Court identifies below.

## BACKGROUND[1]

This case involves three players: WesBanco (a bank), Eco (a now-defunct commercial lighting and solar provider), and FSG (a signage, electrical, and solar contractor). (Doc. 23, #384). In January 2024, WesBanco extended a five-million-dollar line of credit to Eco. (*Id.*). Three interrelated documents structured that loan's

[1] The Court has recounted the factual basis for this suit in another opinion. (Doc. 22). There, because WesBanco was defending against a motion to dismiss, the Court was required to accept as true all well-pleaded allegations in WesBanco's amended complaint (Doc. 14) and to draw all reasonable inferences in its favor, (Doc. 22, #351 n.1 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008))). But the parties have now swapped roles. As the non-movant, FSG is entitled to have all the well-pleaded allegations in its counterclaim (Doc. 23) accepted as true and to have all reasonable inferences drawn in its favor. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). So the Court provides a fresh (but brief) retelling of the parties' allegations and again cautions the reader that they are just that—allegations.

terms: a loan agreement, a promissory note, and a security agreement. (*Id.* at #372). WesBanco attached copies of those three documents as exhibits to its Amended Complaint. (Loan Agreement, Doc. 14-1 (Ex. A); Promissory Note, Doc. 14-2 (Ex. B); Security Agreement, Doc. 14-3 (Ex. C); Doc. 23, #372)).[2] Beyond that, FSG alleges that Eco's owner, Thomas LaPour Kirkpatrick, also personally guaranteed the loan. (Doc. 23, #384).

As security for the loan, Eco offered up many of its assets as collateral. Specifically, WesBanco took a security interest in all Eco's current accounts and any "accounts … monies, payments, and all other rights" that arose out of Eco's sale of any other collateral property described in the commercial security agreement. (Doc. 14-3, #152; Doc. 23, #384). Moreover, the security agreement extensively described that other collateral:

> All Inventory, Equipment, Accounts (Including but not limited to all health-care insurance receivables), Chattel Paper, Instruments (including but not limited to all promissory notes), Letter-of-Credit Rights, Letters of Credit, Documents, Deposit Accounts, Investment Property, Money, Other Rights to Payment and Performance, and General Intangibles (including but not limited to all software and all payment intangibles); all attachments, accessions, accessories, fittings,

[2] FSG claims in its answer that it lacks knowledge and information sufficient to verify the authenticity of these documents. (Doc. 23, #372). This would usually function as a denial of the documents' authenticity, Fed. R. Civ. P. 8(b)(5), which would prevent the Court from considering their contents, *See Bassett*, 528 F.3d at 430; *Ruffing v. Masterbuilt Tool & Die, LLC*, No. 1:08-cv-01264, 2009 WL 185950, at *5 (N.D. Ohio Jan. 23, 2009). But FSG repeatedly refers to the loan and the underlying documents in its counterclaim and seems to assume their authenticity. (*See* Doc. 23, #372, 384–85; FSG's Mem. Opp'n J. on the Pleadings, Doc. 33, #499 ("In January 2024, Eco and WesBanco entered into a $5 million loan agreement.")). Since there appears to be no meaningful dispute that the loan documents attached to WesBanco's amended complaint are authentic, the Court will exercise its discretion to consider their contents. *Whitfield v. Muskingum Cnty.*, No. 2:23-cv-1448, 2024 WL 4227040, at *3 (S.D. Ohio Sep. 18, 2024) ("When evaluating a motion for judgment on the pleadings, a court can consider the pleadings and any written exhibits attached to the pleadings.").

> Increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, Inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

(Doc. 14, #123; Doc. 14-3, #152; Doc. 23, #372 (admitting that this language appears in the security agreement)). To protect that security interest, the agreement expressly prohibited Eco from transferring or disposing of any of the collateral without WesBanco's consent. (Doc. 23, #374; Doc. 14-1, #143; *see also* Doc. 14-3, #153). It also granted WesBanco a set-off right in all Eco's accounts and the right to collect any payment that a third party owed to Eco. (Doc. 14-3, #152, 155).

To perfect its security interest, WesBanco filed a Uniform Commercial Code financing statement with the Ohio Secretary of State that described the collateral with the same language WesBanco used in the security agreement. (Doc. 23, #372–73; UCC Financing Statement, Doc. 14-4, #158). FSG agrees that WesBanco filed the financing statement with the Secretary and does not allege any defect in perfection or priority. (Doc. 23, #372–73).

Soon after taking the loan, Eco started experiencing financial troubles. (Doc. 23, #384). It turned to FSG for help. (*Id.*). The companies negotiated an asset purchase agreement where FSG agreed to buy a substantial portion of Eco's assets and "step in to complete Eco's work." (*Id.* at #374, 384; Asset Purchase Agreement,

Doc. 14-5, #159 (Ex. E)). The agreement, however, was contingent upon WesBanco's approval. (Doc. 14-5, #160). That approval never came, so the asset purchase agreement never took effect. (*See* Doc. 23, #375; *see also* Doc. 33, #499 ("[T]he agreement became null and void.")). Nevertheless, agreement or no, the transfer occurred as a practical matter. FSG absorbed Eco's workforce, acquired some assortment of Eco's assets—the parties disagree on exactly which ones—and took on Eco's outstanding obligations, both to its customers and its vendors. (*Compare* Doc. 14, #125, ¶ 17 ("FSG had taken control of substantially all of [Eco's] assets."), *with* Doc. 23, #374, ¶ 17 (admitting by omission that FSG took control of some Eco assets but denying it possesses "knowledge or information sufficient to form a belief about what property constitutes WesBanco's purported 'Collateral'"), *and id.* at #384, ¶¶ 9–10 (admitting that FSG acquired "certain Eco assets," that it retained Eco's workforce, and that it began fulfilling Eco's outstanding vendor and customer obligations)).

While FSG could not rely only on the four corners of the asset purchase agreement (as WesBanco had not approved it), Eco and Kirkpatrick assured FSG that it would receive compensation for the work it was providing. (Doc. 23, #384; Doc. 33, #499–500). And Eco provided FSG with financial data that convinced FSG the deal had a reasonable upside. (Doc. 23, #384–85). One problem, though—while FSG did not know it at the time, that financial data misrepresented Eco's solvency. (*Id.* at #385). Relying on the asset purchase agreement, Eco and Kirkpatrick's assurances, and the inaccurate financial data, FSG began working on Eco's projects, expending

millions of its own dollars in labor and material costs. (*Id.*). And, as a result, customers also began paying Eco for the work. (*Id.*).

But despite those efforts, Eco defaulted on its WesBanco loan. (*Id.*). So WesBanco pursued and obtained a three-million-dollar judgment from the Hamilton County Court of Common Pleas that granted the bank "immediate possession of all property, goods, and chattels described in the [s]ecurity [a]greement." (Agreed J. Entry, *WesBanco Bank, Inc. v. Eco Eng'g, Inc.*, No. A2403638 (Hamilton Cnty. Ct. C.P. Dec. 17, 2024); *see also* Judgment Entry, *WesBanco Bank, Inc. v. Eco Eng'g, Inc.*, No. A2403638 (Hamilton Cnty. Ct. C.P. Aug. 14, 2024)). Judgment in hand, WesBanco started seizing the collateral. That included the bank account Eco maintained with WesBanco, which contained customer payments for work that FSG had completed. (Doc. 23, #385). WesBanco also initiated a garnishment action in Washington state court against another company that owed Eco money. (*Id.*).

Closer to home, once WesBanco learned that FSG had obtained some of Eco's assets, WesBanco also brought this action against FSG seeking to recover those assets. (*See generally* Doc. 14). FSG filed a pre-answer motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which this Court denied. (FSG Mot. to Dismiss, Doc. 17; Op. & Order, Doc. 22).

FSG then answered and raised several counterclaims against both Eco and WesBanco. (Doc. 23, #382). As to WesBanco, FSG asserts the following counterclaims: (1) tortious interference with contract (Count Seven), (2) unjust enrichment (Count Eight), and (3) conversion (Count Nine). (*Id.* at # 391–94). FSG also brought a claim

for civil conspiracy (Count Ten) against both WesBanco and Eco. (*Id.* at #394–95). As FSG tells it, WesBanco and Eco carried out a "coordinated scheme" to "divert project funds" to WesBanco that rightfully belonged to FSG. (*Id.* at #383). The underlying purpose of that scheme, or so FSG surmises, was to maximize WesBanco's recovery while also minimizing the amounts that Kirkpatrick otherwise might have owed on his personal guarantee of WesBanco's loan to Eco. (*Id.* at #394).

WesBanco answered the counterclaims, largely denying FSG's allegations. (Pl.'s Answer to FSG Countercl., Doc. 27, #419–22). It then moved for judgment on the pleadings. (Doc. 32). In the main, WesBanco argues that it was entitled to seize Eco's accounts because of the above-described Ohio state-court judgment and its perfected security interest in Eco's assets. (*Id.* at #466–67, 470, 473–75). So, WesBanco contends, FSG's claims against it—all of which rely on the notion that WesBanco wrongfully interfered with FSG's interest in the account funds—are legally insufficient. (*Id.* at #466). FSG opposed the motion and in the alternative requested leave to amend should the Court dismiss any of its counterclaims. (Doc. 33, #513). WesBanco replied in turn. (Doc. 34).

With that, this matter is ripe for review.

## LEGAL STANDARD

When a defendant moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the analysis "generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), in

turn, a plaintiff—or, as here, a counterclaimant—must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). While a "plausible" claim for relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege facts sufficient for the Court "to draw the reasonable inference that the defendant is liable." *Id.* In determining whether the allegations meet that standard, the Court "construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take the allegations as gospel, no matter how unsupported they are. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation modified).

In other words, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (quotation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (quotation omitted). In short, a court will dismiss an action

when "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

## LAW AND ANALYSIS

WesBanco asks the Court to dismiss every counterclaim FSG raises against it. (Doc. 32, #466). The Court takes each count in turn and finds that only one counterclaim survives WesBanco's motion.

### A. WesBanco Is Entitled to Judgment on Counterclaim Count Seven, Tortious Interference with Contract.

WesBanco contends that it is entitled to judgment on FSG's counterclaim for tortious interference with contract. (Doc. 32, #470). The Court agrees.

To plausibly plead a claim of tortious interference with contract, the plaintiff must establish (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) damages. *Kenty v. Transam. Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995) (adopting Restatement (Second) of Torts § 766 (A.L.I. 1979)). Only the third and fourth elements are at issue here. (Doc. 32, #470). WesBanco contends that it did not intentionally cause Eco to breach its contract with FSG and that, even if WesBanco did so intend, its perfected security interest in Eco's accounts justified its conduct. (*Id.* at #470–71). The Court disagrees with WesBanco as to the former but agrees as to the latter—any interference WesBanco may have caused was privileged.

### 1. FSG Plausibly Pleaded that WesBanco Intended to Procure a Breach of the Eco–FSG Contract.

Start with the third element: intent. It is well settled that this element is met when the defendant acts with the purpose or desire to interfere with a contract's performance. 88 Ohio Juris., Torts, § 17 (3d ed. Supp. 2026). Here, FSG generally alleged that WesBanco acted intentionally to procure a breach of the Eco–FSG contract by sweeping funds from Eco's bank account and initiating out-of-state garnishment proceedings against Eco. (Doc. 23, #391–92). But FSG never alleged any facts suggesting that WesBanco had the *purpose or desire* to procure a breach of the Eco–FSG contract. 88 Ohio Juris., Torts, § 17 (3d ed. Supp. 2026). In fact, FSG alleged just the opposite: that WesBanco acted "with the intent to satisfy debts owed by Eco and Kirkpatrick." (Doc. 23, #392). So that well-trodden path to demonstrating intent is not available here.

But that is not the end of the story. Ohio law also suggests that an entity's *knowledge* that its conduct will cause a breach of contract between third parties can satisfy the intent element. While the Ohio Supreme Court has not directly addressed the issue, some Ohio courts, recognizing the Ohio Supreme Court's adoption of § 766 of the Second Restatement of Torts, *Kenty*, 650 N.E.2d at 866, have held that liability can attach "to an interference that is incidental to the actor's independent purpose and desire but known to [it] as a necessary consequence of [its] action." *Ginn v. Stonecreek Dental Care*, 30 N.E.3d 1034, 1041 (Ohio 12th Dist. 2015) (quoting Restatement (Second) of Torts § 766 cmt. j (A.L.I. 1979)). That is, a plaintiff can plead the intent element of tortious interference with contract by alleging facts that

plausibly show "the defendant knew that interference was certain or substantially certain to occur as a result of its actions." *RFC Cap. Corp. v. EarthLink, Inc.*, 2004-Ohio-7046, ¶ 68 (10th Dist.) (citing Restatement (Second) of Torts § 766 cmt. j (A.L.I. 1979)); *Kent State Univ. v. Bradley Univ.*, 136 N.E.3d 774, 779–80 (Ohio 11th Dist. 2019); *Miller v. Pennitech Indus. Tools, Inc.*, No. 2356-M, 1995 WL 230894, at *5 (Ohio 9th Dist. Apr. 19, 1995); *Universal Steel Bldg. Corp. v. Dues*, 237 N.E.3d 274, 305 (Ohio 3d Dist. 2024).[3]

Admittedly, other Ohio courts, although firmly in the minority, take a different view. They adopt the bright-line rule that a company does not intend to cause a breach of contract between third parties when it is "merely trying to enforce its … legal rights." *Columbia Dev. Corp. v. Krohn*, 2014-Ohio-5607, ¶ 22 (1st Dist.); *Michael v. Miller*, 262 N.E.3d 1147, 1158 (Ohio 8th Dist. 2025); *contra Kenneth J. Majcen & Assocs. v. Phoenix Assocs., Inc.*, No. 76454, 2001 WL 60038, at *6 (Ohio 8th Dist. Jan. 18, 2001) (finding evidence that defendant's conduct was purposeful or done "with knowledge that interference was certain or substantially certain to occur"). Put differently, an entity that solely seeks to assert its legal rights does not "intend" to

[3] WesBanco directs the Court to *Guangzhou Consortium Display Product Co. v. PNC Bank, N.A.*, 956 F. Supp. 2d 769, 783 (E.D. Ky. 2013), for the proposition that "an awareness of business relationships does not equate to intent." (Doc. 32, #470). WesBanco acknowledges, though, that the *Guangzhou* court reached its holding by "applying Kentucky law on tortious interference with contract." (*Id.*). Ohio's approach is slightly different. It allows plaintiffs to demonstrate intent by showing that the defendant was aware of the contractual relationship. *E.g.*, *Ginn*, 30 N.E.3d at 1041. Since this Court's subject-matter jurisdiction is founded upon diversity of citizenship and FSG brought its claims under Ohio law, the Court must apply the substantive law of Ohio, not Kentucky. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). So the rule described in *Guangzhou* is not helpful here.

cause a breach of the third parties' contract, even if the entity knows its acts will induce a breach.

With competing views in the Ohio courts of appeals, and no answer from the ultimate authority on Ohio law, this Court is left with the task of predicting how the Ohio Supreme Court would resolve the issue. *In re Graham Square, Inc.*, 126 F.3d 823, 827 (6th Cir. 1997); *Imperial Hotels Corp. v. Doe*, 257 F.3d 615, 620 (6th Cir. 2001). To do so, the Court must consider "all available data," including Ohio's intermediate appellate court decisions and past decisions from the Ohio Supreme Court. *See Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981).

Here, the prediction seems straightforward. As noted, the Ohio Supreme Court has already announced that Ohio's version of intentional interference with contract is taken directly from § 766 of the Second Restatement of Torts. *Kenty*, 650 N.E.2d at 866 ("We too adopt the analysis of the Restatement."). Consistent with that, the majority of Ohio intermediate appellate courts that have addressed the issue—which have concluded an entity intends to procure a breach of the third parties' contract if it knows its acts are certain or substantially certain to induce a breach—derived their rule from comment j to § 766. *E.g.*, *Ginn*, 30 N.E.3d at 1041. The minority of Ohio courts that go the other way have done so inconsistently and with thin citations to either the Restatement or other Ohio precedents. *E.g.*, *Krohn*, 2016-Ohio-5607 at ¶ 22. These datapoints lead the Court to predict that the Ohio Supreme Court would align with the majority of intermediate appellate courts in adopting the analysis in comment j to § 766, and hold that an entity acts with the intent to procure a breach

of a contract between third parties if it knows its acts are certain or substantially certain to induce a breach.

Now consider how FSG fares under this intent rule. With a dramatic flair, it alleges the following:

> This case involves the collapse of a failed company, Eco Engineering, Inc. ("Eco"), and a calculated effort by its founder and leader, Thomas Kirkpatrick ("Kirkpatrick"), and its primary lender, WesBanco Bank, Inc. ("WesBanco"), to ensure that only their debts were paid—at the direct expense of those who actually kept the business alive. As Eco teetered on the cusp of bankruptcy, Kirkpatrick and WesBanco worked hand-in-hand to divert project funds—earned through the labor and outlay of Plaintiff, Facility Solutions Group, Inc. ("FSG")—to satisfy a personal judgment against Kirkpatrick, leaving subcontractors and service providers unpaid.

(Doc. 23, #383). With the hyperbole stripped away, FSG alleges that WesBanco knew about the Eco–FSG contract and took actions that were certain or substantially certain to cause Eco, a financially distressed company that had just defaulted on a loan, to breach that contract. (*Id.* at #383, 385). While FSG does not use those exact terms, the Court is bound to "examine the substance of the complaint," *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) (quoting *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001), and draw all reasonable inferences in FSG's favor. *Keene Grp., Inc.*, 998 F.3d at 310. So the Court finds that FSG has plausibly pleaded the third element of intentional interference with contract.

**2. FSG Did Not Plausibly Plead that WesBanco Lacked a Justification for its Interference with the Eco–FSG Contract.**

Turn to the fourth element of tortious interference with contract: lack of justification. This element recognizes that only "improper interference with a

contract is actionable." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). That makes good sense—the business world is rife with competing interests, obligations, and legal rights. It is inevitable that an entity will at times be entitled to interfere with dealings between third parties.

There is no crystallized list of privileges that might justify an entity in interfering with a contract. Restatement (Second) of Torts § 767 cmt. b. Instead, "[t]he issue in each case is whether the interference is improper … under the circumstances." *Fred Siegel Co.,* 707 N.E.2d at 858 (quoting Restatement (Second) of Torts § 767 cmt. b). Usually, an entity's interference is justified if it "asserts in good faith a legally protected interest of its own ... [and] believes that [its] interest may otherwise be impaired or destroyed by the performance of the contract or transaction." Restatement (Second) of Torts § 773; *accord* Restatement (Third) of Torts § 17 (A.L.I. 2020); *Union of Needletrades, Indus. & Textile Emps. AFL-CIO v. Am. Cap. Strategies, Ltd.*, 546 F. Supp. 2d 546, 561 (S.D. Ohio 2008).

While each case is its own, the specific privilege at play here—a creditor's right to seize collateral after debtor default—is well established. "Ohio courts have approved the privilege of … creditors to interfere with contracts in the furtherance of their legitimate business interests." *Bridge v. Park Nat'l Bank*, 903 N.E.2d 702, 708 (Ohio 10th Dist. 2008); *Courie v. ALCOA*, 832 N.E.2d 1230, 1238 (Ohio 8th Dist. 2005); *Michael*, 262 N.E.3d at 1159; *see also Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).[4] Ohio statute, too, grants a secured

[4] Given the breadth of Ohio authorities holding that creditors are justified in interfering with their debtors' contracts after default, the Court sees no value in an exhaustive analysis of the

party the right to "sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." Ohio Rev. Code Ann. § 1309.610(A) (West 2026).

So the question is whether FSG has pleaded facts sufficient to plausibly show that WesBanco's interference with the Eco–FSG contract was somehow improper. The Court finds that FSG's assertion of impropriety is not plausible. FSG does not contest that WesBanco had a perfected security interest in at least some of Eco's assets. (*See* Doc. 23, #372–73). FSG admits that the security agreement between WesBanco and Eco granted WesBanco a security interest in all Eco's "accounts," "deposit accounts," "money," and "other rights to payment and performance." (*Compare* Doc. 14, # 123, ¶ 7 (capitalization altered), *and* Doc. 14-3, #152, *with* Doc. 23, 372, ¶ 7). And both parties agree that WesBanco seized "money" from Eco's "accounts" that derived from "rights to payment" that Eco possessed when it defaulted. (Doc. 14-3, #152 (capitalization altered); Doc. 23, #385). Those admissions are enough. Even accepting FSG's well-pleaded facts as true, the Court finds that WesBanco had a perfected security interest in Eco's accounts and was privileged to seize the funds they contained, even if doing so resulted in a breach of the Eco–FSG agreement. *E.g.*, *Bridge*, 903 N.E.2d at 708.

FSG says that those account funds were "directly attributable to [its] performance." (*Id.*). That may be so, but it is unclear why that would matter to the

---

seven-factor balancing test the Ohio Supreme Court adopted in *Fred Siegel Co.*, 707 N.E. 2d at 860. Suffice to say that the Court has considered these factors alongside the creditor-privilege cases and finds that, under the facts as they are alleged here, FSG has not plausibly pleaded that WesBanco's interference with the FSG–Eco contract was improper.

tortious-interference claim. FSG never alleges it was one of Eco's secured creditors, let alone a secured creditor with priority over WesBanco. It also never alleges a defect in WesBanco's perfection of its security interest. That WesBanco seized funds that might have been attributable to FSG's work, while unfortunate, does not render WesBanco's acts improper. As a creditor pursuing collateral after a debtor defaulted, WesBanco was entitled to "interfere with contracts in the furtherance of [its] legitimate business interests." *Bridge*, 903 N.E.2d at 708; *see also* Ohio Rev. Code Ann. § 1309.610(A) (West 2026).

As a final salvo, FSG argues that the existence of privilege is "a fact issue for a jury to decide and is not resolvable on the pleadings alone." (Doc. 33, #505). True, one unreported decision from the Northern District of Ohio has said that. *Monroe Fed. Saving & Loan Ass'n v. NEA Galtier Parking, LLC*, No. 3:12-cv-52, 2012 WL 3600223, at *3–4 (N.D. Ohio Aug. 21, 2012) (holding that the issue of privilege is "not capable of resolution upon a motion to dismiss" under Ohio law). But that court relied upon one Ohio summary judgment appeal. *Id.* (citing *Elwert v. Pilot Life Ins. Co.*, 602 N.E.2d 1219 (Ohio 1st Dist. 1991)). It does not appear to have taken stock of the various Ohio appellate opinions that have upheld the dismissal of tortious-interference claims because the plaintiff did not plausibly plead the absence of privilege. *Ament v. Reassure Am. Life Ins. Co.*, 905 N.E.2d 1246, 1258–59 (Ohio 8th Dist. 2009); *Arms Trucking Co., Inc. v. Braun*, 2014-Ohio-5077, ¶ 29 (11th Dist.); *Inwood Vill., Ltd. v. Christ Hosp.*, 2012-Ohio-3434, ¶ 1, 20 (1st Dist.); *Paradigm Constr. Corp. v. Sechler*, No. 93AP-1090, 1994 WL 114891, at *3 (Ohio 10th Dist. Mar.

24, 1994). Given these authorities, FSG's suggestion that Ohio law reserves the issue of privilege—or lack thereof—for the jury alone is not well taken. (Doc. 33, #505).

Because FSG has not plausibly pleaded that WesBanco lacked justification for its interference with the Eco–FSG contract, the Court finds that WesBanco is entitled to judgment on count seven of FSG's counterclaim.

### B. WesBanco Is Entitled to Judgment on Counterclaim Count Eight, Unjust Enrichment.

WesBanco next contends that FSG has not plausibly pleaded its counterclaim for unjust enrichment. (Doc. 32, #472). To state a claim for unjust enrichment, a plaintiff must allege that: (1) it conferred a benefit upon the defendant, (2) the defendant knew of the benefit, and (3) the defendant retained the benefit in circumstances where it would be unjust to do so without payment. *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005). The purpose of the tort "is not to compensate the plaintiff for any loss or damage suffered … but to compensate [it] for the benefit [it] has conferred on the defendant." *Hughes v. Oberholtzer*, 123 N.E.2d 393, 397 (Ohio 1954).

WesBanco contests only the first and third elements. (Doc. 32, #472). It says that FSG conferred a benefit exclusively upon Eco, not WesBanco, and that, even if FSG conferred a benefit upon WesBanco, WesBanco's retention of that benefit was not unjust because of its perfected security interest in Eco's accounts. (*Id.* at #472–73). The Court agrees with the first argument and finds it dispositive, so it addresses only the first element of unjust enrichment: the conferral of a benefit.

Generally, when an express contract exists, a claim for unjust enrichment is "confined to the parties to the contract." *Nationwide Heating & Cooling, Inc. v. K & C Constr., Inc.*, No. 87AP-129, 1987 WL 16802, at *2 (Ohio 10th Dist. Sep. 10, 1987). A third party who incidentally benefits from a contract between two others is not the proper target for an unjust enrichment claim, even if the third party receives a benefit from the contract or one of the contracting party's acts. *Id.*; *see also Deffren v. Johnson*, 169 N.E.3d 270, 275–76 (Ohio 1st Dist. 2021). "The fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched." Restatement (Third) of Restitution and Unjust Enrichment § 2 (A.L.I. 2011).

That rule has exceptions, of course. But they are narrow, "typically arising where a subcontractor sues a property owner for payment not received from a general contractor." *Deffren*, 169 N.E.3d at 275. These exceptional cases generally involve a fact question about whether the property owner prompted the subcontractor to complete some work. *Nationwide Heating & Cooling*, 1987 WL 16802, at *2. Other Ohio courts have further limited the exception to cover only circumstances where "the subcontractor is not paid by the contractor *and the owner has not paid the contractor* for the aspect of the job at issue." *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 861 (6th Cir. 2002) (collecting Ohio cases).

Here, while WesBanco was Eco's creditor, it stood as "a stranger to the contractual relationship between" Eco and FSG. *Deffren*, 169 N.E.3d at 276. FSG does not allege that WesBanco was party to the Eco–FSG contract, nor does FSG allege

that it was performing work for WesBanco or at WesBanco's prompting. *Nationwide Heating & Cooling*, 1987 WL 16802, at *2. In fact, FSG acknowledges that WesBanco withheld its consent from the written Eco–FSG asset purchase agreement, rendering that agreement "null and void." (Doc. 33, #499). FSG seems to accept that WesBanco did not want the Eco–FSG deal to move forward, at least not in the form set forth in the proposed agreement. But FSG decided essentially to go through with the arrangement anyway, "[r]elying on assurances from Eco and Kirpatrick" and the financial data they provided. (Doc. 23, #384). FSG has alleged no facts to show that WesBanco had anything to do with encouraging that decision. It is regrettable that Eco (allegedly) stiffed FSG and that WesBanco has benefitted from—or at least has not been put in a worse position by—Eco's (allegedly) unsavory tactics. But a third party's incidental benefit, without more, is simply not enough to plausibly plead a claim for unjust enrichment against that third party. *See Deffren*, 169 N.E.3d at 275. Thus, the Court finds that WesBanco is entitled to judgment in its favor on counterclaim count eight.

### C. WesBanco Is Entitled to Judgment on Counterclaim Count Nine, Conversion.

WesBanco says it is entitled to judgment on FSG's counterclaim for conversion. (Doc. 32, #473). The Court agrees. Conversion is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172, 175 (Ohio 1990). To state a claim for conversion, a plaintiff must plausibly allege: (1) a right to ownership or possession of property at the time of the

alleged conversion, (2) that the defendant converted the property by a wrongful act or disposition of the plaintiff's property rights, and (3) damages. *Pertuset v. Hull*, 2022-Ohio-2348, ¶ 33 (4th Dist.).

However, "a security interest in property operates as a defense to a conversion claim" because the party holding the security interest does not commit a wrong by taking possession or control of the property. *Northway McGuffey Coll. v. Brienza*, 2008-Ohio-6207, ¶ 35 (7th Dist.) (citation modified); *see also Fultz & Thatcher v. Burrows Grp. Corp.*, 2006-Ohio-7041, ¶ 45 (12th Dist.) ("[B]ecause [defendant] was acting within its contract rights, there is no cause of action for tort claims arising out of the contract."); *Chuparkoff v. Farmers Ins. of Columbus*, 2006-Ohio-3281, ¶ 38–40 (9th Dist.); *Blon v. Bank One, Akron, N.A.*, 519 N.E.2d 363, 368–69 (Ohio 1988). That's not surprising. A secured party is permitted to take possession of collateral once a debtor defaults. Ohio Rev. Code Ann. §§ 1309.601(A), .607(A), .610(A) (West 2026).

WesBanco's perfected security interest in Eco's account bars FSG's conversion claim. As noted above, FSG does not contest that WesBanco had a perfected security interest in all Eco's "accounts," "deposit accounts," "money," and "other rights to payment and performance." (*Compare* Doc. 14, # 123, ¶ 7 (capitalization altered), *and* Doc. 14-3, #152, *with* Doc. 23, 372, ¶ 7). It also agrees that WesBanco seized "money" from Eco's "accounts" that derived from "rights to payment" that Eco possessed when it defaulted. (Doc. 14-3, #152 (capitalization altered); Doc. 23, #385). Since FSG agrees that the security agreement between Eco and WesBanco granted WesBanco

"a contractual right to control and possess" Eco's accounts upon its default, the Court finds that WesBanco's seizure of the account at issue here "is not wrongful and is not conversion." *Brienza*, 2008-Ohio-6207, at ¶ 35.

FSG, of course, alleges that it had a "clear, identifiable, and superior ownership interest or right to possession in specific funds paid by Eco's customers." (Doc. 23, #394). But the Court is not obliged to accept as true "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation modified). Given that FSG agrees WesBanco had a perfected security interest in Eco's accounts, the Court finds FSG's naked assertion that it had a superior ownership interest too implausible to accept as true. Thus, the Court finds that WesBanco is entitled to judgment on counterclaim count nine.

### D. WesBanco Is Entitled to Judgment on Counterclaim Count Ten, Civil Conspiracy.

That leaves FSG's counterclaim for civil conspiracy. (Doc. 32, #474–75). Like the other counterclaims, the Court finds that FSG has not plausibly pleaded a civil-conspiracy claim against WesBanco.

Civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *LeFort v. Century 21-Maitland Realty Co.*, 512 N.E.2d 640, 645 (Ohio 1987). The defendants must share "a common design" or understanding to commit an underlying unlawful act. *Pumphrey v. Quillen*, 141 N.E.2d 675, 680 (Ohio 9th Dist. 1955). And the alleged co-conspirators must enter the scheme with malicious intent, "that state of mind under which a person does a wrongful act

purposely, without a reasonable or lawful excuse, to the injury of another." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (quoting *Pickle v. Swinehart*, 166 N.E.2d 227, 229 (Ohio 1960)). Put differently, there is no civil conspiracy where one defendant knows they're committing a wrongful act, but the other defendant lacks such knowledge. One cannot unknowingly conspire with another. *See id.* at 867 (upholding jury verdict for civil conspiracy to commit fraud where home-equity lender had "knowledge of the fraudulent activities of" construction company pitchman who induced homeowner to take on a home-equity loan).

There is an additional wrinkle: FSG alleges that WesBanco participated in a conspiracy to commit fraud. (Doc. 23, #395). That changes FSG's pleading burden. A civil-conspiracy claim predicated on fraud is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement. *MV Cir. Design, Inc. v. Omnicell, Inc.*, No. 1:14-cv-2028, 2015 WL 1321743, at *3 (N.D. Ohio Mar. 24, 2015); *Strobl v. Croft*, No. 1:24-cv-140, 2025 WL 555445, at *4 (E.D. Tenn. Feb. 19, 2025). The complaint must state with particularity the circumstances constituting the underlying fraud. Fed. R. Civ. P. 9(b). That means the plaintiff must, "at a minimum … 'allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). Further, because "[c]onspiracy in and of itself does not establish a basis for recovery … in Ohio," a plaintiff bringing a conspiracy-to-defraud claim

must plausibly allege "actionable fraud *as a result of the conspiracy*." *Gen. Motors Acceptance Corp. v. Hern Oldsmobile-GMC Truck, Inc.*, No. 67921, 1995 WL 527593, at *9 (Ohio 8th Dist. Sep. 7, 1995) (emphasis added).

FSG claims that Eco and WesBanco conspired to defraud FSG. (Doc. 23, #395). As FSG tells it, WesBanco and Eco "maliciously and knowingly combined to engage in a coordinated scheme to deprive FSG of funds it had rightfully earned through the performance of work on various projects." (*Id.*). But that allegation is too conclusory for the Court to accept as true, especially considering FSG's heightened pleading burden under Rule 9(b). *Coffey*, 2 F.3d at 161–62; *Iqbal*, 556 U.S. at 678; 16 Ohio Juris., Conspiracy–Civil Aspects, § 9 (3d ed. Supp. 2026) ("[A] mere allegation that the defendants conspired together, without setting up the facts constituting the conspiracy, is not sufficient.").

So what allegations suggest that WesBanco had a hand in (or had any knowledge of) Eco's alleged misrepresentations? Hardly any. As WesBanco points out, FSG's fraud claim is based solely on Eco's wrongdoing. (Reply Supp. Mot. J. on the Pleadings, Doc. 34, #528). Of course, nobody—not even Eco, (*see* Entry of Default, Doc. 31, #464)—disputes that FSG plausibly alleges Eco committed fraud by misrepresenting key aspects of its financial status. (*Id.* at #389).[5] But FSG never

[5] Specifically, FSG alleges that Eco made the following particular misrepresentations sometime between January and May 2024:

> Eco knowingly and falsely represented—both through express statements and material omissions—that it would compensate FSG for the labor, services, and materials it provided on various projects performed for Eco's customers.
>
> Eco further misrepresented its financial condition to FSG. This included, without limitation, Eco intentionally misrepresenting outstanding contract

alleges any particular facts demonstrating that WesBanco helped Eco make those misrepresentations, that WesBanco intended that Eco make those misrepresentations, or that WesBanco even knew Eco had made them at the time it seized Eco's account. The closest FSG gets is its allegation that "WesBanco, with knowledge that FSG was performing work [for Eco], began sweeping Eco's bank accounts—seizing customer payments for work largely or entirely completed and earned by FSG." (Doc. 23, #385). All that alleges, though, is that WesBanco knew FSG might have had some interest in the funds; it does not allege—let alone allege with particularity—facts that plausibly show WesBanco shared a common design or understanding with Eco to defraud FSG, *Pumphrey*, 141 N.E.2d at 680, that WesBanco acted "purposely, without a reasonable or lawful excuse," to injure FSG, *Williams*, 700 N.E.2d at 868, or that Eco's fraud was in any way "a result of" WesBanco's (as opposed to Eco's own) acts, *Gen. Motors Acceptance Corp.*, 1995 WL 527593, at *9.

To sum up, the facts that FSG alleges show only that WesBanco's seizure of Eco's accounts followed Eco's purportedly unscrupulous dealings. But parallel action does not necessarily imply civil conspiracy. FSG had the burden to allege more than correlation—Rule 9(b) required it to allege particular facts sufficient to plausibly show that Eco and WesBanco joined together in a common plan or scheme to defraud

---

> revenues, misrepresenting the status of work performed and completed to-date, overstating accounts receivable balances, understating accounts payable balances, misallocating funds, and failing to pay vendors/subcontractors.

(Doc. 23, #389).

FSG. FSG has not met that burden as to every element of civil conspiracy. Thus, the Court finds that WesBanco is entitled to judgment on counterclaim count ten.

*  *  *

In short, the Court dismisses all four of FSG's counterclaims on various grounds. But, because this is a first dismissal, the Court dismisses them without prejudice. That is, as FSG requested in the alternative, (*see* Doc. 33, #513–14), it is free to seek leave to amend its pleading to address the shortcomings identified above. Should FSG do so, however, it should attach the proposed amended counterclaims to any motion for leave to amend. *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** WesBanco's motion for judgment on the pleadings (Doc. 32) and **DISMISSES** counterclaim counts seven, eight, nine, and ten **WITHOUT PREJUDICE.** (Doc. 23, #391–95).

**SO ORDERED.**

September 28, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**